RICHARD COLE

*v.*

HENRY COLE.

*Filed at Ottawa May 10, 1883.*

SPECIFIC PERFORMANCE—*when it will be decreed.* This case turns upon the question whether the evidence is sufficient to establish the alleged contract sought to be enforced.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. JOHN T. RICHARDS, for the appellant.

Mr. J. W. WAUGHOP, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant, Richard Cole, in the spring of 1875, was the owner of a number of small lots in Bridgeport, in the city of Chicago, which had cost him $200 or $250 each. At that time Henry Cole, appellee, a cousin, and William Cole, an aged uncle of appellant and appellee, were both working for appellant in his cooper shop. William Cole, the uncle, had boarded with appellant. Appellant proposed to appellee that if he would board the uncle for four years, he would give him the lot in controversy. Appellee accepted the proposition, and the uncle went to and boarded with him. About two years later, appellant further proposed to appellee to buy an old barn and move it on the lot, and fix it up for a dwelling, and as the consideration proposed that appellee should board the uncle for three and one-half years, and should give appellant a small building he owned on leased ground, at $200. This proposition was accepted, appellant getting the small building and appellee the barn, which he moved on his lot, and fitted up for a dwelling. Appellee performed the con-

tract by boarding the uncle for the full period of seven and one-half years. He took possession, moved into the house constructed of the barn, fenced the lot, and planted out trees, etc. After the first agreement was made, the uncle worked for appellant, who deducted the expenses of boarding and washing from the wages of the uncle. Appellee paid all taxes, assessments and insurance on the property. None of these agreements were reduced to writing. On this state of facts the Superior Court of Cook county decreed a specific performance of the agreement, and defendant below appeals, and urges a reversal.

Appellant claims that the agreement was to convey one-half of the lot to appellee, and the other half to William Cole, the uncle, or rather to them as tenants in common, whilst appellee contends it was to be conveyed to him. This is the only contest in the case.

No question is made that appellee has fully performed the contract. At the rate of $3.50 per week, which the evidence shows was low, with the cottage appellee let appellant have, he has paid him about $1600, whilst the evidence shows the lot, without improvements, was not worth, at any time, exceeding one-third of the sum paid. We say paid, because William Cole, the uncle, worked for appellant, who deducted the price of his board from his wages. Nor do we see any the slightest duty or obligation resting on appellee, more than appellant, to purchase and improve this lot, and donate one-half of it to the uncle. The ties of blood were equal upon both nephews, nor is other duty shown to rest upon appellee. Then, this being true, we can perceive no special motive to induce appellee to make such a contract. The probabilities that he did are all decidedly against the presumption he did, and to overcome it there should be clear and satisfactory evidence. There is nothing to show that William Cole paid, or in any manner contributed, a dollar to the purchase or improvement of the lot.

Both parties testify positively, and equally so, to their version of the transaction. Appellee's testimony is corroborated by the three Hopkins, who swear that William Cole told them he was working to enable appellee to get a home, and they saw him often, and he never claimed any interest in the property. In what manner he was aiding appellee is not apparent, as appellant deducted his board from William Cole's wages, and appellee received no benefit from his labor. The evidence of William Cole is confused, and favors appellee's theory as much, or more, than that of appellant. He says he paid nothing for the property. He says the agreement was that appellee was to board him for the lot. He, however, claims he was to have half of the lot during his life, and appellee was to have it after his death. According to his version he seems to suppose appellee was to give him a life interest in the half of the lot for the privilege of boarding him seven and a half years for nothing, whilst he was paying appellant for the board.

We are strongly impressed that appellant has made no case for one-half of the lot to William Cole or himself. On that branch of the case the evidence is in direct conflict, and when the inherent improbability that any man considered capable of transacting his own business would make such an unequal and unjust contract is considered, it produces a decided preponderance in favor of appellee's version of the transaction. We are wholly unable to believe that appellee ever made such an agreement as that claimed by appellant. It is too unreasonable for intelligent belief.

The entire record considered, we are unable to perceive any error in the decree, and it must be affirmed.

*Decree affirmed.*